# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | |
|---|---|
| **Manuel de Jesus Ortega Melendres, et al.,** | **No. 13-16285**<br>**No. 13-17238** |
| *Plaintiffs-Appellees* | **D.C. No. 2:07-cv-02513-GMS**<br>**The Hon. G. Murray Snow,**<br>**United States District Court**<br>**for Arizona, Phoenix** |
| v. | |
| **Joseph M. Arpaio, et al. ,** | **DECLARATION OF DANIEL J.**<br>**POCHODA IN SUPPORT OF** |
| *Defendants-Appellants* | **PLAINTIFFS' MOTION FOR**<br>**FEES ON THE APPEAL** |

I, Daniel Pochoda, declare as follows:

1.      I make the following statements based on my personal knowledge and am prepared to testify to the matters set forth.

2.      I make this declaration in support of the Plaintiffs' Memorandum in Support of Motion for Award of Attorneys' Fees relating to the appeal taken by Defendants concerning the District Court findings of unconstitutionality in its May 24, 2013 decision, and its remedial injunction ordered on April 4, 2014.

3.      I am the Senior Counsel at the American Civil Liberties Union of Arizona ("ACLU"). The ACLU of Arizona is a nonprofit organization with 501(c)(3) tax exempt status.

4.      The ACLU of Arizona has a policy to not contract for or take fees from clients and did not - and will not - receive any in this case.

5.      In addition to me, ACLU paralegal Gloria Torres worked on the appeal.

6.      I am familiar with the work and practice of the ACLU persons on this case. We kept contemporaneous detailed time records of this work.

7. I am familiar with the hourly rates of attorneys and paralegals in the Phoenix market. All of the hourly rates submitted by myself and the paralegal are well within the range for persons of their experience and ability in this market.

8. Gloria Torres has worked as a paralegal and administrator in Phoenix for over thirty years. She was the Senior Paralegal at O'Conner Cavanagh for fourteen years, and the firm administrator at Beshears Wallwork & Bellamy, and at Salmon Lewis & Weldon. She joined the ACLU of Arizona in 2011 and has contributed on numerous successful cases. Her hourly rate in this case is $150.

9. The ACLU of Arizona participants limited their hours to those necessary to responsibly represent Plaintiffs on the appeal. After the contemporaneous entries, we went through and reduced or omitted entries that were redundant, duplicative or excessive, or that had not been sufficiently described. The time of law student interns on this case was not included, nor the fees and costs previously awarded in this litigation. We did not include many hours spent explaining the litigation and the appeal to members of the Latino community and local officials, and responding to media requests.

10. The time records on the appeal are attached as Ex. "A".

11. Attached as Ex. "B" is the affidavit of Tim Eckstein, a partner in the Phoenix firm Osborn Maledon. Mr. Eckstein is familiar with the rates charged by attorneys in the Phoenix market, and with my work and reputation. He finds that my submitted rate of $525 per hour in this case is within the range of attorneys with similar experience and expertise.

12. Most relevant is my recent fee award by United States District Judge Susan R. Bolton in an Arizona case involving the constitutional rights of immigrants. *Lopez-Valenzuela v. Maricopa County,* No. CV-08-00660-PHX-SRB (unpublished opinion attached as Ex. "C"). Judge Bolton found that my requested rate of $525 per hour was reasonable based my experience and the 2013 Arizona

Bar Survey, "Economics of Law Practice in Arizona," and nature of the case. Ex. "C" at 4.

13.     The present application seeks the same rate of $525 per hour previously awarded me by Judge Susan R. Bolton, United States District Court of Arizona.

14.     I am a member in good standing of the Arizona Bar, and of the U.S. Supreme Court, the Ninth Circuit U.S. Court of Appeals, and numerous other courts. I have a Juris Doctor degree from Harvard Law School. After graduation in 1966, I began my legal career with the Civil Rights Division of the U.S. Department of Justice. I served as a trial attorney in a jury discrimination case in Albany, Georgia, a school discrimination case in Lakeland, Florida, several public accommodations cases in Georgia and Alabama, and a voting rights matter in Mississippi.

15.     I have an excellent national reputation as a civil rights advocate, and am consulted by attorneys throughout the country on such matters. I have presented on constitutional issues and litigation in numerous professional seminars and conferences, and before local and national legislative bodies.

16.     I have litigated numerous individual and class cases involving constitutional claims as the lead or co-counsel, at trial and appellate levels including argument before the U.S. Supreme Court. I was a trial attorney in *Inmates of Attica Correctional Facility v. Rockefeller*, 453 F. 2d 12 (1971); this case is still cited for the proposition that voluntary cessation of abusive conduct does not necessarily moot Plaintiffs claims for injunctive relief. During that period I was the lead attorney at trial, before the Second Circuit and in argument before the U.S. Supreme Court in the case of *Preiser v. Newkirk*, 422 U.S. 395 (1975)(involving due process rights of prisoners).

17.     In 1988, while a Professor at the City University of New York School of Law, I was appointed to be the Special Master by the U.S. District Court of

Arizona in a class action based on the constitutional rights of prisoners and resulting in injunctive relief. *Gluth v. Kangas*, 773 F. Supp. 1309, 1316 (D. Ariz. 1988) ("The Special Master's work in this case has been invaluable."), aff'd, 951 F.2d 1504 (9th Cir. 1991).

18.    I have served for ten years on law school faculties at New York University, Santa Clara University and the City University of New York. I taught courses on constitutional law and litigation, civil rights, federal courts, evidence, remedies and trial advocacy.

19.    I continued my civil rights work upon moving to Arizona in 2000. As a volunteer attorney, in 2005 I served as the lead counsel for the ACLU of Arizona in a case alleging the unconstitutional use of race in decisions by officers of the Arizona Department of Public Safety, and resulting in a remedial decree requiring significant change including collecting data for every vehicle stopped and the appointment of a citizens advisory board. *Arnold v. Arizona Department of Public Safety*, United States District Court, District of Arizona, #CIV 01-01463 PCT-JAT.20.    I accepted the position of Legal Director of the ACLU of Arizona in 2007, and have been lead counsel in numerous successful constitutional cases including First Amendment claims and unreasonable seizures in violation of the Fourth Amendment, and overturning several laws passed by the Arizona legislature illegally restricting a woman's right to choice in healthcare decisions including abortions.

20.    I joined this case on behalf of the ACLU of Arizona as co-counsel to the firm of Steptoe & Johnson in 2008, and have had significant involvement at every stage, from the drafting of the Amended Complaint, through discovery and trial, and in formulating the requested relief.

21.    In 2010, Steptoe & Johnson had to withdraw from the case. Due to the limited resources of the non-profit co-counsel organizations, the ACLU and the

Mexican American Legal Defense and Education Fund ("MALDEF"), it was necessary to find a substitute firm to assume the lead role.

22. I spent many hours attempting to find a local firm with sufficient resources willing to take on this role pro bono. I contacted senior or managing partners in five firms in the Phoenix area. Three of them declined due to the potential political controversy surrounding the case or potential conflicts. I met with the managing partners in the remaining two firms. After several discussions with them, both eventually informed me that they were not in position to undertake representation. They, and others I had previously spoken to, recommended that I contact firms outside of Arizona.

23. I then had conversations and conference calls with attorneys and firms in southern California. Several firms considered pooling their resources due to the anticipated time and resource commitment involved. In the end, though, they informed me that they were not in position to make the commitment.

24. Finally, I was informed of the potential interest of some northern California offices of Covington & Burling, a highly respected national firm with experience in class action civil rights matters. Discussions between partners at Covington & Burling and the non-profit counsel resulted in Covington & Burling agreeing to be substituted as lead counsel for Steptoe & Johnson in May 2010.

25. I believe the hourly rates that Covington & Burling have submitted are justified due to the qualifications and experience of the attorneys involved, as well as the difficulty I had finding a firm in Phoenix, Arizona, that was able to represent Plaintiffs in this case.

26. The total fees amount due the ACLU of Arizona for this case based on the time expended by and hourly rates of the persons noted above is set-out in attached Ex. "A."

I declare under penalty of perjury under the laws of the United States and Arizona that the foregoing is true and correct.

EXECUTED on July 1, 2015, in Phoenix, Arizona.


By: /s/ *Daniel J. Pochoda*
Daniel J. Pochoda

# EXHIBIT A

# ACLU Foundation of Arizona (ACLU Foundation of Arizona)
## Time Query Report

| Date | Task | Activity | Actual | | | Billable | | |
|------|------|----------|--------|--|--|----------|--|--|

**File Name: Ortega Melendres, Manuel v. Arpaio / 10-00628**

**User: DJP**

| Date | | Activity | | | Actual | | | Billable |
|------|--|----------|--|--|--------|--|--|----------|
| 3/18/2014 | | Appeal | @ | $525.00 = | $0.00 | 48 Mins @ | $525.00 = | $420.00 |
| Description | Review and research Defendants' opening 9th Circuit brief. | | | | | | | |
| 3/25/2014 | | Appeal | @ | $525.00 = | $0.00 | 1 Hr @ | $525.00 = | $525.00 |
| Description | Draft comments on response to Defendants' attempted distinction of "Saturation" patrols; circulate to co-counsel. | | | | | | | |
| 3/30/2014 | | Appeal | @ | $525.00 = | $0.00 | 18 Mins @ | $525.00 = | $157.50 |
| Description | Draft comments on Defendants' failure to rely on class definition vs. type of patrol. | | | | | | | |
| 4/ 9/2014 | | Appeal | @ | $525.00 = | $0.00 | 30 Mins @ | $525.00 = | $262.50 |
| Description | Emails:(3) to co-counsel re arguments showing Defendants' distinction is untenable. | | | | | | | |
| 5/ 4/2014 | | Appeal | @ | $525.00 = | $0.00 | 24 Mins @ | $525.00 = | $210.00 |
| Description | Draft comments on relevance of Defendants' prior violations. | | | | | | | |
| 5/ 8/2014 | | Appeal | @ | $525.00 = | $0.00 | 36 Mins @ | $525.00 = | $315.00 |
| Description | Draft comments on emphasizing Defendants' process in developing remedy without Defendants' involvement | | | | | | | |
| 5/19/2014 | | Appeal | @ | $525.00 = | $0.00 | 30 Mins @ | $525.00 = | $262.50 |
| Description | Draft comments on impact of Armendariz matters on Plaintiffs' appellate position. | | | | | | | |
| 7/ 9/2014 | | Appeal | @ | $525.00 = | $0.00 | 30 Mins @ | $525.00 = | $262.50 |
| Description | Review and provide inputs on Plaintiffs' final brief. | | | | | | | |
| 11/25/2014 | | Appeal | @ | $525.00 = | $0.00 | 42 Mins @ | $525.00 = | $367.50 |
| Description | Review draft outline for Plaintiffs' oral argument and provide inputs. | | | | | | | |
| 11/25/2014 | | Appeal | @ | $525.00 = | $0.00 | 2 Hrs @ | $525.00 = | $1,050.00 |
| Description | Act as Court for Plaintiffs' moot argument. | | | | | | | |
| 12/ 2/2014 | | Appeal | @ | $525.00 = | $0.00 | 1 Hr 48 Mins @ | $525.00 = | $945.00 |
| Description | Participate in Plaintiffs' moot for oral argument. | | | | | | | |

**Subtotal for DJP:**  Actual: 9.1 hours @ $525.00      Actual: $4,777.50

**User: GAT**

| Date | | Activity | | | Actual | | | Billable |
|------|--|----------|--|--|--------|--|--|----------|
| 10/16/2014 | | Appeal | @ | $150.00 = | $0.00 | 6 Mins @ | $150.00 = | $15.00 |
| Description | Review 9th Circuit Court of Appeals Order rescheduling oral argument to December 3, 2014; docket and distribute same. | | | | | | | |
| 10/31/2013 | | Appeal | @ | $150.00 = | $0.00 | 18 Mins @ | $150.00 = | $45.00 |
| Description | Review ECF - Defendants' Notice of Appeal to 9th Circuit Court of Appeals; distribute to legal group; file same. | | | | | | | |
| 11/ 1/2013 | | Appeal | @ | $150.00 = | $0.00 | 18 Mins @ | $150.00 = | $45.00 |
| Description | Review ECF - USCA Case number notice; distribute to legal group; file same. | | | | | | | |
| 4/15/2014 | | Appeal | @ | $150.00 = | $0.00 | 18 Mins @ | $150.00 = | $45.00 |
| Description | Review ECF - Amended Notice of Appeal to 9th Circuit Court of Appeals; distribute to legal group; file same. | | | | | | | |

**Subtotal for GAT:**  Actual: 1.0 hours @ $150.00      Actual: $150.00

**Subtotal for Ortega Melendres, Manuel v. Arpaio / 10-00628:**

Billable:
Time: **10 Hours 6 Mins**

Amount: **$4,927.50**

# EXHIBIT B

| | |
|---|---|
| **Manuel de Jesus Ortega Melendres, et al.,** | **No. 13-16285**<br>**No. 13-17238** |
| *Plaintiffs-Appellees* | **D.C. No. 2:07-cv-02513-GMS** |
| v. | **The Hon. G. Murray Snow,**<br>**United States District Court** |
| **Joseph M. Arpaio, et al. ,** | **for Arizona, Phoenix** |
| *Defendants-Appellants* | |

## DECLARATION OF TIMOTHY J. ECKSTEIN
## IN SUPPORT OF DANIEL J. POCHODA'S FEE APPLICATION

I, Timothy J. Eckstein, declare as follows:

1.      I am a member of the law firm of Osborn Maledon PA and am filing this affidavit in support of the fee application submitted in this case by Dan Pochoda, and specifically the hourly rate proposed in the application for Mr. Pochoda's work.

2.      I graduated from Harvard Law School in 1996 and have been practicing law at Osborn Maledon since 1998.

3.      During my 16 years of practice in Arizona I have handled a wide variety of criminal, civil and civil rights litigation matters.  As a practicing attorney, I have become familiar with the hourly rates charged by lawyers at my firm and at other firms in the Phoenix market.

4.      Under 42 U.S.C. § 1988, attorneys' fees are calculated according to the "prevailing rates in the relevant community, regardless of whether plaintiff is

represented by private or non-profit counsel." *Blum v. Stenson*, 465 U.S. 886, 894 (1984). The awarded fee should approximate "the fee that the prevailing attorney would have received if she or he had been representing a paying client in a comparable case." *Perdue v. Kenny A*, 559 U.S. 542, 551 (2010).

5. Mr. Pochoda's experience and background merits comparison to the rates charged by senior partners at large Phoenix firms. His proposed hourly rate in this case of $525 is consistent with, and within the range of, those rates.

6. Details of Mr. Pochoda's career are set-out in his declaration. Briefly, Mr. Pochoda is a 1966 graduate of Harvard Law School and began his career with the Civil Rights Division of the Department of Justice. Mr. Pochoda is a nationally known and respected civil rights litigator and teacher. He has litigated numerous constitutional cases at the trial and appellate levels, including at the United States Supreme Court.

7. Mr. Pochoda has served on the law faculties of the City University of New York School of Law, New York University and Santa Clara University. He has presented on constitutional issues before legislative bodies and special commissions, and at legal conferences and trainings.

8. In 1989, Mr. Pochoda was appointed by the U.S. District Court in Arizona to be Special Master in three state-wide cases involving constitutional claims by the class of persons confined in Arizona prisons.

9.     In 2001, Mr. Pochoda and I represented Mark Koch in his challenge to the Arizona Department of Corrections' indefinite detention of him in one of its super-maximum facilities.  Through Mr. Pochoda's outstanding work, we were able to secure a judgment in favor of Mr. Koch throwing out ADOC's confinement order.  *Koch v. Lewis*, 216 F.Supp.2d 994 (2001).

10.     Mr. Pochoda has been the Legal Director of the ACLU of Arizona since 2007.  From 2007 through 2014, my firm has worked as cooperating counsel on various ACLU cases coordinated by Mr. Pochoda, including those successfully challenging the conditions of confinement for pretrial detainees in the Maricopa County Jail (*Graves v. Arpaio*, 623 F.3d 1043 (9th. Cir. 2010)), and enjoining the Maricopa County Attorney's proposed application of the Arizona Medical Marijuana Act (*Welton v. State of Arizona*, Maricopa County Superior Court No. CV2013-014852).  In short, I am familiar with Mr. Pochoda's outstanding work and record of success in civil rights litigation brought by the ACLU.

11.     In my judgment, an hourly rate of $525 for Mr. Pochoda's work in this case is reasonable.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 1st day of July, 2015.

By: /s/ *Timothy J. Eckstein*
Timothy J. Eckstein

3

# EXHIBIT C

**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Angel Lopez-Valenzuela, et al., | No. CV-08-00660-PHX-SRB |
| Plaintiffs, | **ORDER** |
| v. | |
| Maricopa County, et al., | |
| Defendants. | |

The Court now considers Plaintiffs' Motion for Attorneys' Fees and Non-Taxable Expenses ("MAF") (Doc. 279).

**I.      BACKGROUND**

Plaintiffs brought this action challenging the constitutionality of an Arizona state constitutional amendment known as Proposition 100 and its implementing statute, rules, and policies (collectively, the "Proposition 100 laws"). (Doc. 1, Compl.) Arizona law, as amended by Proposition 100, "categorically forbid[] [courts from] granting undocumented immigrants arrested for a wide range of felony offenses any form of bail or pretrial release, even if the particular arrestee [wa]s not a flight risk or dangerous." *Lopez-Valenzuela v. Arpaio*, 770 F.3d 772, 775 (9th Cir. 2014). Plaintiffs brought claims pursuant to 42 U.S.C. § 1983 alleging that the Proposition 100 laws violated the substantive and procedural components of the Due Process Clause of the Fourteenth Amendment, the Fifth Amendment guarantee against self-incrimination, the Sixth Amendment right to counsel, and the Eighth Amendment's Excessive Bail Clause, and

also argued that the Proposition 100 laws were preempted by federal immigration law. (*Id.* ¶¶ 51-82.) The Court granted Defendants' motion to dismiss and motion for summary judgment and denied Plaintiffs' motion for summary judgment. (*See* Doc. 246, Mar. 29, 2011 Order; Doc. 255, May 13, 2011 Order.) On appeal, the Ninth Circuit concluded that the Proposition 100 laws facially violated substantive due process. *See Lopez-Valenzuela*, 770 F.3d at 791-92. On remand, this Court entered final judgment permanently enjoining the operation of the Proposition 100 laws and ordering Defendants to immediately implement pretrial custody procedures consistent with the Court's Order and the Ninth Circuit decision. (Doc. 276, Final J. on Remand at 2.) Plaintiffs seek an award of $1,161,884.88 in attorneys' fees and $12,103.47 in non-taxable expenses for work performed in this Court under 42 U.S.C. § 1988(b) based on their successful constitutional challenge to the Proposition 100 laws. (Doc. 287, Reply in Supp. of MAF at 10.)[1]

## II.    LEGAL STANDARDS AND ANALYSIS

Under the general fee-shifting provision for federal civil rights cases, 42 U.S.C. § 1988(b), "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." *See also Herrington v. Cnty. of Sonoma*, 883 F.2d 739, 743 (9th Cir. 1989) ("[A] court's discretion to deny fees under § 1988 is very narrow and . . . fee awards should be the rule rather than the exception." (internal quotations omitted)). The parties do not dispute that Plaintiffs are the prevailing party in this case. Defendants argue, however, that Plaintiffs' attorneys' fees should be reduced because Plaintiffs' attorneys' hourly rates are unreasonably high, the time logs include entries that are block billing or ambiguous, in violation of Local Rule 54.2(e), and the time logs include hours that are excessive or duplicative. (Doc. 285, Defs.' Resp. in Opp'n to MAF ("Resp. to MAF") at 2-12.) Defendants also argue that the amount of non-taxable

---

[1] Defendants argued in their Response that it was premature to decide the attorneys' fees Motion because they have a petition for a writ of certiorari pending before the Supreme Court; however, the Supreme Court has recently denied their petition. *See Cnty. of Maricopa v. Lopez-Valenzuela*, 135 S. Ct. 2046 (2015).

expenses Plaintiffs seek should be reduced because it includes inappropriate expenses, such as parking lot fees, rental car fees, and grocery bills. (*Id.* at 2.)

### A.   Attorneys' Fees

To determine the reasonableness of requested attorneys' fees, federal courts generally use the "lodestar" method. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *United States v. $186,416.00 in U.S. Currency*, 642 F.3d 753, 755 (9th Cir. 2011). Under this method, the Court must first determine the initial lodestar figure by taking a reasonable hourly rate and multiplying it by the number of hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 433. In its determination of whether the hourly rate or hours expended are reasonable, the Court should consider the *Kerr* factors that have been subsumed within the initial lodestar calculation. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir. 1975); *Cunningham v. Cnty. of Los Angeles*, 879 F.2d 481, 487 (9th Cir. 1988). These factors are: "(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, and (4) the results obtained." *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 n.6 (9th Cir. 1987).[2] There is a "strong presumption" that the lodestar figure represents a reasonable fee, and adjustments of the lodestar are proper only in "rare" and "exceptional" cases. *Blum v. Stenson*, 465 U.S. 886, 898-901 (1984).

### 1.   Hourly Rate

The Court must first determine if Plaintiffs' attorneys' legal services were billed at a reasonable hourly rate. The "reasonable hourly rate" is not determined by the rates actually charged but by the rate prevailing in the community for "similar work performed by attorneys of comparable skill, experience, and reputation." *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 908 (9th Cir. 1995). The relevant community is generally the forum in which the district court sits. *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010). "[R]ates outside the forum may be used if local counsel was

---

[2] A "rote recitation of the relevant factors is unnecessary" so long as the district court adequately explains the basis for the award. *O'Neal v. City of Seattle*, 66 F.3d 1064, 1069, n.5 (9th Cir. 1995).

unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). The party seeking a fees award should submit evidence—in addition to the attorneys' own affidavits—supporting the rates claimed. *Hensley*, 461 U.S. at 433; *Blum*, 465 U.S. at 895 n.11. "Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Once the party seeking attorneys' fees presents such evidence, the opposing party "has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." *Chaudhry v. City of L.A.*, 751 F.3d 1096, 1111 (9th Cir. 2014) (quoting *Camacho*, 523 F.3d at 980) (internal quotation marks omitted).

Plaintiffs' attorneys submitted declarations in support of this Motion and request hourly fees based on the geographical area in which each attorney is based:

| Attorney | Legal Market | J.D. | Requested Rate |
|---|---|---|---|
| Cecilia Wang (ACLU-IRP) | San Francisco | 1995 | $700 |
| Monica Ramirez (ACLU-IRP) | San Francisco | 2004 | $525 |
| Andre Segura (ACLU-IRP) | New York | 2006 | $450 |
| Dan Pochoda (ACLU-AZ) | Phoenix | 1966 | $525 |
| Annie Lai (ACLU-AZ) | Phoenix | 2006 | $325 |
| Joel Nomkin (Perkins) | Phoenix | 1979 | $495 |
| Chuck Blanchard (Perkins) | Phoenix | 1985 | $430 |
| Steven Monde (Perkins) | Phoenix | 2005 | $235-$290 |

- 4 -

| Kevin Wein (Perkins) | Phoenix | 2003 | $275 |
|---|---|---|---|
| Kevin Wein (Steptoe) | Phoenix | 2003 | $270-$355 |
| David Bodney (Steptoe) | Phoenix | 1979 | $450-$510 |
| Gladys Limon (MALDEF) | Los Angeles | 2002 | $550 |
| Kristina Campbell (MALDEF) | Los Angeles | 2002 | $550 |
| Jessica Espinoza (MALDEF) | Los Angeles | 2009 | $275 |
| Gina Nyberg (Paralegal-Perkins) | Phoenix | Not applicable | $180-$185 |

(Doc. 279-1, Decl. of Cecillia Wang in Supp. of MAF ("Wang Decl.") ¶ 40; Doc. 279-2, Dec. of Daniel Pochoda ("Pochoda Decl.") ¶¶ 15, 19; Doc. 279-3, Decl. of Victor Viramontes in Supp. of MAF ("Viramontes Decl.") ¶¶ 14-16; Doc. 279-4, Decl. of Bruce Converse in Supp. of MAF ("Converse Decl."), Ex. A; Doc. 279-5, Decl. of Daniel Barr in Supp. of MAF ("Barr Decl.") ¶¶ 2, 6.) Plaintiffs have also submitted declarations from other attorneys not involved in this litigation in support of their argument that the rates requested are reasonable for the area in which each attorney practices. (*See* Wang Decl., Exs. I, J; Pochoda Decl., Ex. A; Viramontes Decl. ¶ 22.) Defendants argue that the hourly rates requested are unreasonably high and should comport with the prevailing market rates for the forum in which the Court sits. (Resp. to MAF at 2-7.) Defendants specifically request that the Court adopt an hourly rate for each attorney "that is in keeping with the Arizona State Bar's reported 2013 median hourly rates and, in any event, no greater than the rates for the 95th Percentile in 2013 for attorneys of similar years of experience." (*Id.* at 7 (citing Doc. 285-1, Ex. A, Arizona Bar Survey, 2013 Economics of Law Practice in Arizona ("2013 Survey")).)[3]

---

[3] Defendants also request that the Court adopt an hourly rate of $150 for "non-attorney timekeepers," but provides no justification for this rate. (Resp. to MAF at 3.) The Court concludes that Ms. Nyberg's requested hourly rate of $180-185 for her paralegal services is reasonable based on the listed rates in the 2013 Survey. (*See* 2013 Survey at 23 (reporting the 2013 legal assistant hourly rates for individuals with 1-4 years

- 5 -

The Phoenix attorneys' hourly rates are reasonable based on the 2013 Survey and the evidence submitted by Plaintiffs' counsel. The novelty and difficulty of the underlying case support an hourly rate near the higher end of Defendants' proposed fee range, and the Phoenix attorneys' reported rates are either below or reasonably close to the 95th percentile for attorneys with similar years of experience reported in the 2013 Survey. (*See* Resp. to MAF at 5; 2013 Survey at 20.)

The Court cannot conclude that the ACLU Foundation Immigrants' Rights Project ("ACLU-IRP") and Mexican American Legal Defense and Education Fund ("MALDEF") attorneys have carried their burden of showing the unavailability of local counsel to justify the out-of-market rates sought. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992) (stating that absent evidence that "local counsel was unavailable . . . courts rarely look to other legal markets to determine the appropriate prevailing rate"). Although it is undisputed that the ACLU-IRP and MALDEF attorneys possess special expertise and experience in the areas of civil rights and immigration law, Plaintiffs provide no argument or evidence demonstrating that there were no local attorneys who were willing and able to provide comparable expertise.[4] Without evidence to justify a departure from the local forum rule, the Court will adjust the requested hourly rates of the ACLU-IRP and MALDEF attorneys to comport with the prevailing rates in the Phoenix area. In assigning these rates, the Court considered not only the rates reported in the 2013 Survey, but also the novelty and difficulty of the underlying case, and the skill, experience, and reputation of the ACLU-IRP and MALDEF attorneys. Based on these considerations, the Court concludes that the following hourly rates are reasonable:

---

of experience).)

[4] Plaintiffs' Reply incorrectly claims that the unavailability of local counsel was discussed in their opening brief. (Reply in Supp. of MAF at 2.) Plaintiffs' opening brief and its supplemental materials fail to address the unavailability of local counsel. It would be improper for the Court to consider any argument presented for the first time in Plaintiffs' Reply. *See Sogeti USA LLC v. Scariano*, 606 F. Supp. 2d 1080, 1086 (D. Ariz. Mar. 27, 2009).

| Attorney | Adjusted Rate |
|---|---|
| Cecillia Wang (ACLU-IRP) | $515 |
| Monica Ramirez (ACLU-IRP) | $450 |
| Andre Segura (ACLU-IRP) | $405 |
| Gladys Limon (MALDEF) | $450 |
| Kristina Campbell (MALDEF) | $450 |
| Jessica Espinoza (MALDEF) | $265 |

### 2.    Hours Billed

The Court must next determine if Plaintiffs' attorneys expended a reasonable amount of hours in this case. The party seeking the award of attorneys' fees should submit evidence supporting the hours worked and rates claimed. *Hensley*, 461 U.S. at 433. Hours that were not "reasonably expended" can be excluded from this initial calculation. *Id.* at 434. These include hours that are excessive, duplicative, or otherwise unnecessary. *Id.*

Defendants argue that Plaintiffs' attorneys' fees should be reduced because Plaintiffs' counsel engaged in block billing, in violation of Local Rule 54.2. (Resp. to MAF at 8); *see also* LRCiv 54.2(e)(1)(B) (stating that the fee applicant's "itemized statement for legal services rendered shall reflect, in chronological order . . . [t]he time devoted to each individual unrelated task performed on such day"). When counsel engages in block billing by grouping several tasks together, it is difficult for a court to evaluate the reasonableness of each individual task within the entry. *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). However, this type of block billing is not inappropriate per se when the party seeking fees meets the basic requirements of "listing his hours and identifying the general subject matter of his time expenditures." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (internal quotation marks omitted); *see Hensley*, 461 U.S. at 433 (noting that although the fee

applicant bears the burden of submitting "evidence supporting the hours worked and rates claimed," an applicant is "not required to record in great detail how each minute of his time was expended"). After reviewing the time entries Defendants claim violate Local Rule 54.2, the Court concludes that these entries either include multiple related tasks, which is permissible under Local Rule 54.2, or are at least sufficiently detailed for the Court to determine that the entries that are in fact block-billed are nonetheless reasonable.

Defendants also argue that the Court should reduce the requested fees because Plaintiffs' attorneys' time logs include entries that lack the specificity required under Local Rule 54.2. (Resp. to MAF at 9); *see also* LRCiv 54.2(e)(2) ("The party seeking an award of fees must adequately describe the services rendered so that the reasonableness of the charge can be evaluated.") Defendants fail to identify any particular entry that they believe lacks the requisite specificity. (*See* Resp. to MAF at 9.) Upon review of the time logs Plaintiffs' counsel submitted, the Court cannot conclude that they contain vague or ambiguous entries that justify a reduction in the number of hours billed.

Defendants also argue that the Court should reduce the requested fee because Plaintiffs' attorneys' time logs contain entries that are excessive or duplicative. (*Id.* at 9-12 (identifying the preparation of a single subpoena as excessive and eight tasks that Defendants believe involved duplicative efforts).) After reviewing the disputed entries, the Court cannot conclude they constitute excessive hours or needless duplication, even if more than one attorney was involved in completing a particular task. *Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1286 (9th Cir. 2004) ("Participation of more than one attorney does not necessarily amount to unnecessary duplication of effort.") It appears that a number of the entries Defendants claim are duplicative are either a continuation of the same task or performed with a different purpose, such as "reviewing" or "editing" as opposed to "drafting" a particular document. The Court also cannot conclude that it was unreasonable for more than one attorney to participate in the preparation of a deposition simply because he or she was not the attorney taking the deposition. *See, e.g.*, *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 971 (N.D. Cal. 2014)

("In large cases . . . , it is often the case that one person cannot have a complete command of all relevant facts or areas on which a witness may testify. It may therefore be necessary for several attorneys to prepare for a deposition or prepare a witness."). Because Defendants have not carried their burden of rebuttal, the Court will not reduce Plaintiffs' request based on excessive or duplicative efforts.

### B. Non-Taxable Expenses

Defendants briefly contest Plaintiffs' request for non-taxable expenses, arguing that "travel expenses for an attorney to attend   hearings or depositions who did not argue the matter or take the deposition, rental car fees, services for Court filings, mailings, and transportation to Court or other locations, parking lot fees, hotel bills, and [grocery] charges" are "costs that should be attributed to the organizations and firms' overhead." (Resp. to MAF at 2.) Defendants do not cite to any authority to support their claim that Plaintiffs' request for non-taxable costs should be reduced. Plaintiffs' expenses for meals, shipping, postage, parking, and travel are recoverable, as they are generally charged to fee paying clients. *See Harris v. Marhoefer*, 24 F.3d 16, 19-20 (9th Cir. 1994) (affirming award of expenses for postage, hotel bills, and meals because they are expenses that would normally be charged to a fee paying client). The Court cannot conclude that the expenses claimed by Plaintiffs are unreasonable.

### III. CONCLUSION

After taking into account the adjusted hourly rates of the ACLU-IRP and MALDEF attorneys, Plaintiffs are entitled to $ $964,653.70 in attorneys' fees and $12,103.47 in non-taxable expenses.

**IT IS ORDERED** granting in part and denying in part Plaintiffs' Motion for Attorneys' Fees and Non-Taxable Expenses (Doc. 279).

/ / /

/ / /

/ / /

/ / /

1

**IT IS FURTHER ORDERED** awarding Plaintiffs $964,653.70 in attorneys' fees

2

and $12,103.47 in non-taxable expenses, pursuant to 42 U.S.C. § 1988.

3

4

5

Dated this 25th day of June, 2015.

6

7

8

9

_____

Susan R. Bolton

10

United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28